# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# DOCKET NO. 5:17-CV-00001-FDW

| | |
|---|---|
| SUSAN E. KELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff Susan E. Keller's Motion for Summary Judgment (Doc. No. 10) filed on May 22, 2017, and Defendant Nancy A. Berryhill's Motion for Summary Judgment (Doc. No. 12) filed on June 5, 2017. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 10), GRANTS Defendant's Motion for Summary Judgment (Doc. No. 12), and AFFIRMS the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed an application for Title XVI Social Security benefits on October 19, 2012, alleging disability due to back problems, stomach problems, gall bladder surgery, hernia repair, irritable bowel syndrome, and hip problems. (Tr. 239, 329). After her application was denied initially and upon reconsideration (Tr. 152, 163), Plaintiff requested a hearing (Tr. 173). The

hearing commenced on June 4, 2015, and on July 17, 2015, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application. (Tr. 43, 65).

The ALJ determined Plaintiff was not disabled. (Tr. 57). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date and that she had severe impairments of headaches, ventral and inguinal hernia, cervical posterior disc bulge, central stenosis, piriformis syndrome, osteoarthritis, hypertension, anxiety, depression, and obesity (Tr. 48); however, those impairments did not meet or medically equal a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 48-50). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> [S]itting for up to six hours during an eight-hour workday and standing and/or walking for up to two hours during an eight-hour work day with the use of an assistive device to ambulate. [Plaintiff] must be allowed to alternate between sitting and standing up to two times an hour. [Plaintiff] is limited to occasional postural activities and to frequent, but not continuous, use of her bilateral lower extremities to push, pull, and operate foot controls. [Plaintiff] can follow short and simple instructions and perform routine tasks. [Plaintiff] cannot perform work that requires a production rate or demanding pace. [Plaintiff] is able to sustain attention and concentration for up to two hours at a time . . . and must avoid workplace hazards and avoid working in environments dealing with crisis situations, complex decision-making, or constant changes in a routine setting.

(Tr. 50-1). Nevertheless, in response to a hypothetical that factored in the above limitations, a vocational expert identified various jobs Plaintiff could perform that were available in significant numbers in the economy. (Tr. 56-7). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 57).

Plaintiff requested review of the ALJ's decision by the Appeals Council, and the Appeals Council denied the request for review on November 3, 2016. (Tr. 1-4). Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the

ALJ's decision is not based on proper legal standards and is not supported by substantial evidence as 42 U.S.C. § 405(g) requires.

## II. STANDARD OF REVIEW

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, 42 U.S.C. § 405(g) (2006); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. at 401). If this Court finds that the Commissioner applied the correct legal standards and that his decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

## III. ANALYSIS

On appeal to this Court, Plaintiff makes the following assignments of error: (1) the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"); (2) the ALJ failed to give a complete explanation of the nonexertional mental functions in the broad areas of functioning and make a complete finding as

to Plaintiff's mental RFC; and (3) the ALJ failed to adequately assess Plaintiff's credibility. For the reasons stated below, the Court finds none of these assignments of error so compelling as to merit remand.

### A. The Testimony Of The Vocational Expert Did Not Conflict With The DOT.

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the fifth step, the ALJ considers the claimant's age, education, work experience, and RFC to decide whether she can perform alternative work that exists in significant numbers in the national economy. Id. §§ 404.1520(a)(4)(v), 404.1560(c). The claimant has the burden of proof for the first four steps, but at the final, fifth step the Commissioner bears the burden to prove that the claimant is able to perform alternative work. See Brown v. Yuckert, 482 U.S. 137, 146 (1987).

The ALJ "rel[ies] primarily" on the DOT to determine whether sufficient other work exists for the claimant in the national economy. SOC. SEC. ADMIN., Policy Interpretation Ruling: Titles II & IV: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2 (the Ruling). The ALJ "may also use" a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice. Id. The vocational expert's opinion "must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

Because an expert's testimony can sometimes conflict with the DOT, the Social Security Administration has promulgated a multi-page, formal ruling to "clarify[y the] standards for the use of vocational experts." Id. at 81. The Ruling requires that the ALJ "inquire, on the record" whether

the vocational expert's testimony "conflict[s]" with the DOT, and also requires that the ALJ "elicit a reasonable investigation for" and "resolve" conflicts between the expert's testimony and the DOT. Id. at *2. The ALJ must resolve conflicts "before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." Id.

Plaintiff argues the ALJ should have identified and resolved an apparent conflict between the occupations the VE recommended for an individual whose RFC is limited to "short and simple instructions," and the DOT classification of those same occupations at reasoning development level three. (Doc. No. 11, p. 8-9); DOT 249.587-018, 209.567-014, 205.367-014. Specifically, Plaintiff argues that a reasoning level three occupation conflicts with the ALJ's RFC determination because reasoning level three occupations require the ability to follow complex instructions, and Plaintiff's RFC is limited to short and simple instructions.

The requirements of reasoning level three are consistent with the ability to follow short and simple instructions. The Social Security regulations describe a claimant's ability to comprehend things using the binary categories of "short and simple instructions," or "complex instructions;" the DOT's reasoning scale includes more nuanced categories. Vallejo v. Astrue, No. 3:10-CV-00445-GCM, 2011 WL 4595259, at *14 (W.D.N.C. Aug. 4, 2011), report and recommendation adopted, No. 3:10CV445, 2011 WL 4597348 (W.D.N.C. Sept. 30, 2011). Notably, the upper reasoning levels (four through six) require a worker to apply principals to problems while the lower three levels (one through three) only require a "commonsense understanding." Thacker v. Astrue, No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011), report and recommendation adopted, No. 3:11-CV-00246-GCM, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).

Courts within seven federal circuits have held that there is no conflict between a reasoning level three occupation and a work-related limitation to simple, routine, unskilled work. Thacker,

2011 WL 7154218, at *4 (compiling cases).  Plaintiff points to this Court's decision in Brinkley v. Colvin for support, but the VE in Brinkley identified occupations for the claimant involving gas, fumes, and/or odors when the claimant was limited to avoiding gases, dust, and fumes.  No. 3:16-CV-00172-FDW, 2017 U.S. Dist. LEXIS 6794 (W.D.N.C. January 18, 2017).  Here, reasoning level three requires a commonsense understanding—not complex instructions—which aligns with the ability to perform short and simple instructions.  As there was no apparent conflict, the ALJ was not required to elicit any further explanation from the VE.  Thus, the ALJ did not err.

**B. The ALJ's Mental RFC Determination Was Supported by Substantial Evidence.**

In conducting an RFC assessment, an ALJ must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ."  SSR 96-8p.  The ALJ is required to consider all evidence of impairments, medical or otherwise, and take into account the cumulative effect of those impairments in determining a claimant's disability.  42 U.S.C. § 423(d)(2)(B).  The RFC is intended to take into account scenarios where even non-severe limitations conspire with other impairments so as to prevent a claimant from "performing past relevant work" or limiting "the range of other work that the individual may still be able to do."  SSR 96-8p.

Plaintiff argues the ALJ's mental RFC determination was unsupported by substantial evidence.  Specifically, Plaintiff asserts the ALJ failed to explain her conclusion that Plaintiff is capable of sustaining attention and concentration for up to two hours, and the ALJ failed to adequately discuss Plaintiff's difficulties in activities of daily living and social functioning.  The Court disagrees.  The ALJ thoroughly discussed and assessed Plaintiff's ability to maintain concentration, persistence, or pace and her ability to engage in activities of daily living and social functioning.

The ALJ addressed Plaintiff's ability to maintain concentration, persistence, or pace throughout the decision (Tr. 50, 54, 55) noting Plaintiff's "cognitive functioning [was] intact" (Tr. 50). The ALJ cited the consultative psychological examination performed by Jessica Medford, Psy.D., on November 28, 2012, and Dr. Medford's opinion that Plaintiff "could understand, retain, and follow instructions and sustain her attention to perform simple repetitive tasks." (Tr. 55). The ALJ also discussed the opinions of state agency consultants, Jennifer Fulmer, Ph.D. and Ben Williams, Ph.D. Id. The state agency consultants opined Plaintiff had no medically determinable impairment; however, the ALJ assigned the opinions "little weight" because the opinions did not take into account Plaintiff's history of anxiety and depression. Id.

Additionally, the ALJ pointed to Plaintiff's objective medical evidence that evidenced a history of depression and anxiety but an absence of hospitalizations or specialized psychiatric treatment for the disorders. (Tr. 54-5). The ALJ noted that Plaintiff acknowledged her Xanax prescription "has helped with her depression and anxiety," and that Plaintiff "denied any problems paying attention or concentrating, denied any problems reading or writing, drove regularly, took care of her daughter, and could manage her own money." (Tr. 54).

Similarly, the ALJ weighed Plaintiff's social interaction with friends and family in identifying only mild difficulties in social functioning. (Tr. 49). The ALJ determined Plaintiff retained the ability to participate in a wide range of activities of daily living. (Tr. 49). Specifically, the ALJ concluded that Plaintiff's abilities of daily living, "which include driving, taking care of a child, shopping, and performing household chores" did not support greater limitations that those in the RFC. (Tr. 54). The ALJ also pointed out that Plaintiff socialized with friends on occasion, spent time with her daughter and husband, and "also indicat[ed] that she [did] not have any problems getting along with family, friends, and neighbors." (Tr. 49).

7

The ALJ sufficiently explained the ways in which evidence of Plaintiff's mental impairments factored into the limitations the ALJ imposed regarding Plaintiff's concentration, persistence, and pace. Additionally, the ALJ offered substantial evidence to support her conclusions of moderate restrictions in activities of daily living and mild difficulties in social functioning when limiting Plaintiff's work abilities. Accordingly, the Court finds substantial evidence supports the mental limitations the ALJ imposed within the RFC determination. Thus, the ALJ did not err.

### C. The ALJ Properly Evaluated Plaintiff's Credibility.

Statements about symptoms or pain alone do not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(c). Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment. Craig, 76 F.3d at 591 (citing Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994)). Even a physician's recorded observations of complaints does not "transform" them into objective medical evidence; these observations are personal to the doctor and lack objectivity. See id. at n.2. Where a claimant's statements about the intensity, persistence, or functionally limiting effects of claimant's symptoms do not appear to be substantiated by objective medical evidence, the ALJ must evaluate a claimant's symptoms by looking to all the evidence in the case record. SSR 96-7p, superseded by SSR 16-3p.

Both parties agree the ALJ found Plaintiff's impairments could be expected to lead to Plaintiff's alleged symptoms; however, Plaintiff contests the ALJ's basis for finding her testimony "not entirely credible." (Tr. 51). Specifically, Plaintiff relies on the Fourth Circuit's holding in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), claiming the "boilerplate" language utilized "yields no clue to what weight the trier of fact gave the testimony." (Doc. No. 11, p. 19). Where, as here, the ALJ goes on to discuss the relevant factors of Plaintiff's symptoms in relation to the

credibility analysis, Mascio is inapposite. See White v. Colvin, No. 3:15-CV-00197-FDW, 2016 WL 3381265, at *6 (W.D.N.C. June 14, 2016). The ALJ thoroughly discussed and assessed the medical evidence of record in order to attempt to substantiate Plaintiff's complaints. The ALJ engaged in a discussion of medication, treatment procedures, compliance with doctors' recommendations, and Plaintiff's activities of daily living. (Tr. 51-4).

Plaintiff claimed she has stabbing and twisting pain in her back, she experiences pain all the time, she must elevate her legs when sleeping because the pain disrupts her sleep, she has depression and anxiety, panic attacks, and could only stand for 20 minutes before experiencing back pain. (Tr. 51). The ALJ discussed Plaintiff's use of Xanax and Plaintiff's testimony that it "helped with her depression and anxiety." (Tr. 55, 72). The ALJ pointed out Plaintiff's treatment and improvement after a procedure to repair her lumbar disc and a subsequent lumbar fusion. (Tr. 52-3). In particular, the ALJ notes a post-operative visit with treating physician A. Gregory Rosenfeld, M.D. where Plaintiff was observed with a normal gait and no tenderness along the cervical, thoracic, and lumbar spines; a consultative consultation with Jessica C. Medford, Psy.D. where Plaintiff was not observed with any gait or posture problems; and a second post-operative visit with treating physician Scott M. McCloskey, M.D. after a procedure to combat Piriformis syndrome where Plaintiff reported doing well with her leg feeling "so much better." (Tr. 52-3).

Additionally, the ALJ notes Dr. Rosenfeld's report of Plaintiff's noncompliance with instructions to wear her Vertalign brace or utilize her Orthofix bone stimulator in November of 2009. (Tr. 53). Finally, the ALJ cites to Plaintiff's activities of daily living in support of his credibility determination, which include driving, taking care of a child, shopping, and performing household chores. (Tr. 54).

Plaintiff argues the ALJ failed to explain why Plaintiff's ability to do chores, drive, take care of a child, and shop is "the equivalent of working full time 8-hours per day, 5 days per week." (Doc. No. 11, p. 22). This argument misconstrues the context in which the ALJ referenced Plaintiff's daily activities. (Tr. 54). The ALJ cites to evidence of Plaintiff's daily activities and compares it to Plaintiff's statements regarding pain in order to assess her credibility—which is entirely permissible under SSR 96-7p and Fourth Circuit precedent. See Craig, 76 F.3d at 595. Whether Plaintiff could perform the activities for a full workday is thus an irrelevant inquiry in the credibility analysis. (Doc. No. 13, pp. 14-15).

The ALJ supplemented the boilerplate language with a discussion of which evidence she found credible and cited to medical opinions and other evidence of record. Accordingly, the ALJ relied on substantial evidence and applied the correct legal standards in determining Plaintiff's statements lacked credibility. Thus, the ALJ did not err.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: August 28, 2017

*[signature]*

Frank D. Whitney
Chief United States District Judge